IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| American Broadcasting Companies, Inc., et al., | : <br> : <br> : |
| Plaintiffs, | : Case No. 1:04cv750 <br> : <br> : District Judge Michael H. Watson |
| v. | : <br> : |
| J. Kenneth Blackwell, et al., | : <br> : |
| Defendant. | : |

### ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Before the Court is the Motion of Plaintiffs American Broadcasting Companies, Inc. (hereinafter "ABC"), the Associated Press (hereinafter "AP"), Cable News Network LP, LLP (hereinafter "CNN"), CBS Broadcasting Inc. (hereinafter "CBS"), Fox News Network LLC (hereinafter "Fox") and NBC Universal, Inc. (hereinafter "NBC") (hereinafter collectively "Plaintiffs") for Temporary Restraining Order. Plaintiffs seek to restrain Defendant J. Kenneth Blackwell, in his official capacity as the Secretary of State of Ohio (hereinafter "Defendant") from prohibiting exit polling within 100-feet of polling places in Ohio on Tuesday, November 2, 2004.

The Court held a scheduling conference, pursuant to Loc. R. 65.1(a), with counsel from both parties participating on Monday, November 1, 2004. An evidentiary hearing was conducted in the early evening of Monday, November 1, 2004.

Upon consideration of the arguments advanced by the parties and the evidence submitted, the Motion of Plaintiff for Temporary Restraining Order is well-taken and

hereby **GRANTED**.

**I.     Facts**

Plaintiffs are three national broadcast networks (ABC, CBS and NBC) and two national cable news networks (CNN and Fox) and AP. Plaintiffs are all engaged in the business, *inter alia*, of providing news and information to the public.

Over the past months, Plaintiffs prepared to cover tomorrow's national election. To assist their election night coverage, Plaintiffs retained two polling organizations to assist them in gathering information from voters on election day. In this instance, the information is gathered by conducting exit polls of voters, after they have voted, who voluntarily agree to answer a questionnaire, in selected polling places in Ohio and the other 49 states and the District of Columbia.[1]

Typically, a reporter (hereinafter "exit pollster" or "pollster") is assigned to each of the polling places randomly selected for Plaintiffs' polls. The pollster stands just outside the exit of the building in which the polling place is located. The pollster wears a badge, which clearly identifies them as a representative of Plaintiffs'. They are instructed to be courteous and businesslike and not to interfere with the election process in anyway.

Plaintiffs have conducted exit polls in Ohio in the past, most recently in connection with Ohio's presidential primary election in March, 2004, without complaint from any voter or Defendant. Prior to covering the primary, Plaintiffs' representatives contacted Defendant's office to advise of their planned activities and to confirm their exit

---

[1] Data is collected from a random sample of voters at a sample of polling places on election day. This is accomplished by asking voters to fill our a short questionnaire as they leave the polling place in a scientifically pre-determined pattern (*i.e.* every fourth voter, every fifth voter, etc.).

pollsters could approach willing voters, after voting, to fill out their questionnaire.  At that time, the Defendant confirmed no provision of Ohio law prohibited the conduct of exit polling and advised Plaintiffs could conduct their exit polls within 100-feet of Ohio polling places as long a they did so in a non-disruptive manner.

Pursuant to Advisory No. 2004-02, dated February 24, 2004, Defendant communicated this information to Ohio election officials.  Exit polls were successfully conducted at selected polling places in Ohio in March, 2004, without incident.

In anticipation of the November 2, 2004 national election, Plaintiffs' representatives again contacted Defendant's office to advise of their planned activities and to confirm those activities could be conducted within 100-feet of Ohio polling places.  In June, they were assured the advisory would be issued by Defendant's office in advance of the election.  However, on Friday, October 29, 2004, Defendant's office informed Plaintiffs, despite Advisory No. 2004-02 and the previous statement that no Ohio law could be interpreted to prohibit exit polling, all Ohio election officials were instructed Ohio's loitering statute should be enforced against exit polling activities on November 2, 2004 (hereinafter "directive").  Thus, prohibiting the conduct of exit polls within 100-feet of Ohio polling places on November 2, 2004.[2]

**II.  Standard of Review**

The Court considers four factors in determining whether to issue a temporary restraining order or preliminary injunction:

---

[2] Defendant issued Directive No. 2004-40 on October 20, 2004.  However, it does not explicitly state exit polls are not permitted within 100-feet of the polling places.  Instead, it merely parrots, in summary fashion, the statutes at issue.

3

1) whether the movant has a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable injury without the injunction;

(3) whether issuance of the injunction would cause substantial harm to others; and

(4) whether the public interest would be served by issuance of the injunction.

*Chabad of S. Ohio & Congregation Lubavitch v.City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004). The factors are not prerequisites; rather, they must be balanced. *Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004).

### III. Discussion

#### A. Likelihood of success on the merits

The first factor the Court must consider when determining whether to grant plaintiffs' request for a temporary restraining order is the likelihood that plaintiffs will prevail on the merits. Plaintiffs must establish this element by clear and convincing evidence. *Imperial Home Decor Group (US) LLC v. Murray*, 75 F. Supp. 2d 753, 755 (N.D. Ohio, 1999).

Plaintiffs argue Defendant's directive will unlawfully restrict their speech and commentary about the political process in violation of the First Amendment. It will restrict Plaintiffs' ability to speak freely with willing individuals in Ohio, after they have voted, about important political issues. Plaintiffs' assert the freedom to speak about elections, government and politics lies at the core of the First Amendment.

Additionally, Plaintiffs contend the use of exit polls are not prohibited under Ohio

4

law and are not subject to the 100-foot restriction which governs electioneering, loitering or congregating at polling places. See O.R.C. §§3501.30, 3501.35 and 3599.24. In support, Plaintiffs rely upon Defendant's prior statement in permitting exit polls, "in keeping with Ohio's past practices, exit pollsters should not be disturbed solely because they are conducting exit polling within the 100-foot boundary."[3]

At issue is Defendant's current interpretation of O.R.C. §§3501.30, 3501.35 and 3599.24. Defendant interprets the foregoing statutes to prohibit exit pollsters to be within 100-feet of the polling place. Defendant derives his authority in this matter from §3501.05, which states, in relevant part,

> The secretary of state shall do all of the following:
>
> * * *
>
> (B)    Issue instructions by directives and advisories to members of the boards as to the proper methods of conducting elections;
> (C)    Prepare rules and instructions for the conduct of elections;

O.R.C. §3501.35 states, in relevant part,

> [d]uring an election and the counting of the ballots, no person shall loiter or congregate within the area between the polling place and the small flags of the United States placed on the thoroughfares and walkways leading to the polling place; in any manner hinder or delay an elector in reaching or leaving the place fixed for casting his ballot . . . No person, not an election official, employee, witness, challenger, or police officer, shall be allowed to enter the polling place during the election, except for the purpose of voting.

O.R.C. §3501.30(A)(4) states,

> Two or more small flags of the United States approximately fifteen inches in length along the top, which shall be placed at a distance

---

[3]The court notes there have been no changes to the statutes upon which Defendant relied for Advisory No. 2004-02.

of one hundred feet from the polling place on the thoroughfares or walkways leading to the polling place, to mark the distance within which persons other than election officials, witnesses, challengers, police officers, and electors waiting to mark, marking, or casting their ballots shall not loiter, congregate, or engage in any kind of election campaigning.

O.R.C. §3599.24 requires, in pertinent part:

(A) No person shall do any of the following:

\* \* \*

(5) Loiter in or about a registration or polling place during registration or the casting and counting of ballots so as to hinder, delay, or interfere with the conduct of the registration or election;

\* \* \*

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." "'[A] major purpose of [the First] Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates. . . .'" *Brown v. Hartlange,* 456 U.S. 45, 52-53 (1982) (quoting *Mills v. Alabama,* 384 U.S. 214, 218 (1966)). Moreover, the First Amendment protects the media's right to gather news. *See, e.g. Branzburg v. Hayes,* 408 U.S. 665, 681 (1972) ("Without some protection for seeking out the news, freedom of the press could be eviscerated."); *see also In re Express News Corp.,* 695 F.2d 807 (5th Cir. 1982)**;** *United States v. Sherman*, 581 F.2d 1358 (9th Cir. 1978). As such, exit polling is, on several levels, speech which is protected by the First Amendment. *The Daily Herald Co. v. Munro,* 838, F.2d 380 (1988).

Defendant's directive is clearly a restriction on political speech. As such, it must be subjected to exacting scrutiny. Defendant must show that his directive "is necessary to

6

serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Ed. Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 45 (1983).

A State "indisputably has a compelling interest in preserving the integrity of its election process," *Eu v. San Francisco Cty. Democratic Central Comm.,* 489 U.S. 214, 231 (1989), and Defendant advances a compelling interest. Defendant expresses a legitimate concern over the anticipated, unprecedented, large voter turnout, which includes a great number of first-time and newly registered voters. Defendant seeks an election day which is orderly and allows Ohio voters the right to cast their ballots in an unimpeded manner. However, mandating that pollsters do not come within 100-feet of the polling place is not necessary to serve the aforementioned interests.

First, as previously stated, the pollsters will not engage voters as they are entering the polls to vote. Instead, as represented by counsel for Plaintiffs, and undisputed by Defendant, there is no contact with a voter until after they have voted and are leaving the building in which the polling place is located. Additionally, Defendants concern that voters waiting in line to vote may overhear discussions between the pollsters and individuals who have already voted is without merit. The representations by Plaintiffs' counsel clearly reveal that the pollsters do not engage in a verbal discussion of the voters choices. Rather, voters will be asked to complete a questionnaire regarding their voting. If they choose to do so, they are given the questionnaire to fill out. If they decide not to participate, the pollster will not engage them any further. Clearly, this cannot be construed as electioneering or any other prohibited activity.

Additionally, Defendant's expressed concerns regarding the pollsters activities

7

causing delays as voters leave the polling place is not a sufficiently compelling state interest to permit the proposed restriction on political speech.  Moreover, there are statutory mechanisms already in place, which Defendant recognized in Advisory No. 2004-02, which can be employed if a pollster's activities impede a voter's ability to exercise their right to vote; "However, if election officials and/or law enforcement officers determine that an exit pollster has unduly hindered or delayed a voter from entering or exiting the polling place, or has been disruptive in violation of the law, appropriate action should be taken."  *See also* O.R.C. §§3501.30, 3501.35 and 3599.24.

### B.  Irreparable harm

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). As such, any restriction on political speech due to enforcement of Defendant's directive, will result in irreparable harm to Plaintiffs as well as any voters who wish to engage in a political discourse with the pollsters.

Additionally, prohibiting Plaintiffs from engaging in exit polling as they have in the past, will prevent them from compiling otherwise irretrievable data.

### C. Harm to others

The Court fails to see how granting the requested relief will cause substantial harm to others.  Polling activities such as these have been conducted in this manner for over two decades.  There is no evidence before the Court that these activities have ever impinged on a citizen's right to vote.  Moreover, as stated above, statutory mechanisms are in place which permit election officials to remove individuals who become disruptive.

### D. Public interest

Finally, the public interest would be advanced by the issuance of a temporary restraining order. The public interest is always served when constitutional rights are vindicated. Additionally, as stated by Defendant, we are potentially faced with an unprecedented voter turnout on this election day. The citizens of the State of Ohio, and the nation as a whole, will benefit from the robust political participation of individuals who exercise their right to vote and engage in political speech.

## IV. Disposition

For the above reasons, the Court **GRANTS** Plaintiffs' Motion for Temporary Restraining Order.

**I T IS SO ORDERED.**

    /s/ Michael H. Watson
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**